FILED
MAY 1 3 2008
Clerk, U.S. District and Bankruptcy Courts

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITES AND EXCHANGE COMMISSION,<br>450 Fifth Street, N.W.<br>Washington, DC 20549<br><br>Plaintiff,<br><br>v.<br><br>BRIAN SPEARS,<br><br>Defendant. | Case: 1:08-cv-00820<br>Assigned To : Kollar-Kotelly, Colleen<br>Assign. Date : 5/13/2008<br>Description: General Civil<br><br>COMPLAINT |

Plaintiff Securities and Exchange Commission ("SEC" or "Commission") alleges for its Complaint against Defendant Brian Spears:

## NATURE OF THE ACTION

1. Defendant Brian Spears and others at U.S. Foodservice, Inc. ("USF") engaged in a large-scale fraud that, for fiscal years 2001 and 2002, materially overstated USF's income by approximately $700 million in Commission filings and other public announcements. When the fraud was disclosed to the public, Ahold's stock price plummeted from approximately $10.69 per share to $4.16 per share. Spears' acts and failures to act, as described below, occurred from 2001 until early 2003, when Spears was a Vice President of Purchasing at USF.

2. USF is a foodservice and distribution company that, at the relevant times, was a subsidiary of Royal Ahold (Koninklijke Ahold N.V.) ("Ahold"). A significant portion of the operating income for USF was derived from promotional allowances ("PAs") paid by USF's vendors. USF executives recorded materially overstated PA entries in the books and records of

USF. These entries did not reflect the company's actual operating performance; instead, they were determined solely by what USF required to make its budgeted earnings. Spears knowingly provided substantial assistance to others providing Ahold's independent auditors with false and misleading information to conceal the fraud.

## JURISDICTION AND VENUE

3. The Commission brings this action pursuant to Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(3)].

4. This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa]. Defendant directly or indirectly has made use of the means or instrumentalities of interstate commerce, or of the mails, or the facilities of a national securities exchange in connection with the transactions, acts, practices and courses of business alleged herein. Certain transactions, acts, practices and courses of business that are the subject of this action occurred within this District, and venue is proper pursuant to Section 27 of the Exchange Act.

## DEFENDANT

5. Brian Spears, 42 years old, was a Vice President in U.S. Foodservice's purchasing department from 2001 until his termination in 2003.

## RELATED ENTITIES

6. Ahold is a publicly-held company organized in the Netherlands with securities that were registered with the Commission pursuant to Section 12(b) of the Exchange Act. At the relevant time, Ahold's common stock traded in the United States on the New York Stock Exchange under the symbol AHO as evidenced by American Depositary Receipts.

7. USF, a foodservice and distribution company with headquarters in Columbia, Maryland, was a wholly-owned subsidiary of Ahold during the relevant time.

## STATEMENT OF FACTS

8. USF purchases food and food-related products from vendors and resells those products to customers throughout the United States.

9. At the relevant time, USF and many of its vendors entered into agreements whereby USF bought products from the vendors and, in return, the vendors paid negotiated rebates or "PAs." These PA agreements were negotiated by members of USF's purchasing department, including Spears. The agreements contained terms including the rates at which USF would earn PAs and the conditions under which they would be earned.

10. For at least fiscal years 2001 and 2002, USF's purchase price for the products it sold to its customers was recorded in USF's books, records, and financial statements as part of the "cost of sales." USF recorded revenue generated from sales to customers other than Ahold-affiliated companies as "net sales." USF recorded PA income from vendors as a reduction of the cost of sales. Because PAs reduced USF's costs, they had the direct effect of increasing USF's and Ahold's earnings.

11. During at least fiscal years 2001 and 2002, USF made no significant profit directly from its end-sales to customers. Instead, the majority of USF's operating income was derived from PAs. Thus, PAs were critical to USF's financial results – without them, USF's and Ahold's operating income would have been materially reduced.

12. USF personnel often referred to PA earnings as "PA income." The PA income accrued and recorded at USF, but not yet collected, was accumulated in a PA receivable account.

13. During at least fiscal years 2001 and 2002, USF's quarterly and year-end financial results were purportedly based, in part, on PA income recorded on the basis of an estimated PA rate. USF's quarterly financial results were, in turn, consolidated into Ahold's quarterly and year-end financial results, which were contained in earnings press releases, SEC filings, and other public statements.

14. During at least fiscal years 2001 and 2002, USF management's compensation was based on, among other things, USF's ability to meet or exceed budgeted earnings goals that were set by Ahold management. Specifically, Spears and other USF executives were eligible to receive bonuses if USF met its budgeted earnings. For the fiscal year 2001, Spears was paid a performance-based bonus of $45,000.

15. USF's management engaged in a scheme to artificially inflate USF's and Ahold's earnings by hundreds of millions of dollars to meet budgeted earnings targets, and thereby obtain substantial monetary bonuses. USF management perpetuated this scheme to "book to budget" by, among other things, recording in USF's and Ahold's books and records PA income that had not been earned.

16. To make it falsely appear that recorded PA income had been earned, Spears and his superiors at USF induced vendors to confirm falsely inflated PA income and receivable balances to USF's outside auditors.

17. When some recipients challenged the accuracy of the confirmation letters, Spears was told by his superiors to tell, and did tell, the particular vendors to sign the confirmation letters and was told to tell, and did tell, the particular vendor, in substance, that the PA income and related PA receivable balances in the letters were not real and/or that USF would not make any effort to collect such amounts. In some cases, Spears knew that USF management sent side

letters to particular vendors acknowledging that the amounts contained in the confirmation letters were incorrect.

18. In particular, in preparation for the audit of USF's 2001 fiscal year, Spears was told by his superiors at USF to call and did call three or four vendors, some of whom received multiple audit confirmation letters for USF's auditors. Spears was told by his superiors at USF to instruct and did instruct those vendors to sign the letters and contact USF if they had any questions. Spears was told by his superiors at USF to inform and did inform the vendors that the accounts receivables in the confirmation letters would not be billed or owed by the vendor to USF.

19. The vendors to whom Spears spoke signed false audit confirmation letters and sent those letters to USF's external auditors.

20. In one instance in connection with the audit of USF's 2001 fiscal year, Spears talked with a vendor who told Spears that he had concerns about the numbers in the confirmation letter. Spears nevertheless encouraged the vendor to sign the letter, and Spears then called the vendor with Spears' supervisor to convince the vendor to sign. Those efforts resulted in that vendor signing and sending a false audit confirmation letter to USF's external auditors.

21. In preparation for the audit of USF's 2002 fiscal year, Spears was told by his superiors at USF to call and did call ten or eleven vendors, and again some of those vendors received multiple audit confirmation letters for USF's auditors. As in the prior year, Spears was told by his superiors at USF to instruct and did instruct those vendors to sign the letters and contact USF if they had any questions. Spears similarly was told by his superiors at USF to inform and did inform the vendors that the accounts receivables in the confirmation letters would not be billed or owed by the vendor to USF.

22. In one instance in connection with the audit of USF's 2002 fiscal year, Spears talked with a vendor who specifically questioned the amount purportedly due at year end as an accounts receivable. Spears expressed concerns about the same amount, as he knew that the amount being confirmed was incorrect. After consultation, Spears was told by his superiors at USF to call and did call the vendor and told the vendor that one of his superiors at USF had promised to send the vendor a 'side letter' stating that the amounts in the audit confirmation letter did not reflect the vendor's true obligations to USF. The vendor then signed the false audit confirmation letter and sent it to USF's external auditors.

23. In another instance in connection with the audit of USF's 2002 fiscal year, Spears spoke to a vendor who told Spears that his company did not owe the amount purportedly due at year end as an accounts receivable as set forth in the audit confirmation letter for USF's auditors that the vendor had received. Spears agreed with the vendor that the amount was too high, yet he continued to encourage the vendor to sign it and send it to the auditors. The vendor then signed the false audit confirmation letter and sent it to USF's external auditors.

## FIRST CLAIM FOR RELIEF

**Fraud**
Violations of Section 10(b) of the Exchange Act [15 U.S.C.
§ 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] Thereunder

24. Paragraphs 1 through 23 are re-alleged and incorporated by reference.

25. By reason of the foregoing, Defendant Spears directly or indirectly, acting intentionally, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails, in connection with the purchase of securities: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state a material fact necessary to make the statements made, in the light of the circumstances under

which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon other persons.

26. By reason of the foregoing, Defendant Spears violated Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5.

## SECOND CLAIM FOR RELIEF

**Reporting**
Aiding and Abetting Violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20 and 13a-1 [17 C.F.R. § 240.12b-20 and § 240.13a-1] Thereunder

27. Paragraphs 1 through 26 are re-alleged and incorporated by reference.

28. The Exchange Act and rules promulgated thereunder require every issuer of a registered security to file reports with the Commission that accurately reflect the issuer's financial performance and provide other true and accurate information to the public.

29. By reason of the foregoing, Defendant Spears aided and abetted Ahold's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1 thereunder.

## THIRD CLAIM FOR RELIEF

**Record Keeping**
Violations of Sections 13(b)(2)(A), (b)(2)(B) and (b)(5) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A), (b)(2)(B), and (b)(5)] and Rule 13b2-1 [17 C.F.R. § 240.13b2-1] Thereunder

30. Paragraphs 1 through 29 are re-alleged and incorporated by reference.

31. The Exchange Act and rules promulgated thereunder require each issuer of registered securities to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the business of the issuer and to devise and maintain a system of internal controls sufficient to provide reasonable assurances that, among other things, transactions are recorded as necessary to permit preparation of financial statements and to

maintain the accountability of accounts. The Exchange Act and rules promulgated thereunder further prohibit any person from directly, or indirectly, falsifying any such required book, record or account and prohibit any person from knowingly circumventing or failing to implement such a system of internal accounting controls.

32. By reason of the foregoing, Defendant Spears aided and abetted Ahold's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act.

33. By reason of the foregoing, Defendant Spears violated Section 13(b)(5) of the Exchange Act and Exchange Act Rule 13b2-1.

### FOURTH CLAIM FOR RELIEF

**Misrepresentations to Auditors**
Violations of Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2]

34. Paragraphs 1 through 33 are re-alleged and incorporated by reference.

35. The Exchange Act further prohibits the making of, or causing to be made, materially false or misleading statements or omissions to an accountant in connection with any required audit, review or examination of the financial statements of any issuer or the preparation or filing of any document or report required to be filed with the Commission.

36. By reason of the foregoing, Defendant Spears aided and abetted violations by Ahold's directors and officers of Exchange Act Rule 13b2-2.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court enter a judgment:

a) permanently enjoining Defendant from violating Exchange Act Sections 10(b) and 13(b)(5) and Exchange Act Rules 10b-5 and 13b2-1;

b) permanently enjoining Defendant from aiding and abetting any violations of Sections 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1 and 13b2-2;

c) ordering Defendant to provide a complete accounting for and to disgorge any and all compensation or economic benefit to which he was not entitled as a result of the conduct described herein, plus prejudgment interest thereon;

d) ordering Defendant to pay a civil monetary penalty pursuant to Section 21(d)(3) of the Exchange Act in respect of his violations;

e) prohibiting Defendant from acting as an officer or director of a public company for a period of five years from the date of entry of Final Judgment pursuant to Section 21(d)(2) of the Exchange Act; and

f) granting such other relief as this Court may deem just and appropriate.

Dated: May 13 2008

Respectfully submitted,

Scott W. Friestad
David Frohlich
Matthew B. Greiner (DC Bar No. 448480)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
Telephone: (202) 551-4526 (Greiner)
Facsimile: (202) 772-9230 (Greiner)

9

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS
Securities and Exchange Commission

### DEFENDANTS
Brian Spears

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)  Queen Anne's
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Matthew B. Greiner (DC Bar # 448480)
Securities and Exchange Commission
100 F Street, N.E.
Washington, DC 20549
(202) 551-4526

Case: 1:08-cv-00820
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 5/13/2008
Description: General Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- (X) 1 U.S. Government Plaintiff
- ( ) 2 U.S. Government Defendant
- ( ) 3 Federal Question (U.S. Government Not a Party)
- ( ) 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | 1 | 1 | Incorporated or Principal Place of Business in This State | 4 | 4 |
| Citizen of Another State | 2 | 2 | Incorporated and Principal Place of Business in Another State | 5 | 5 |
| Citizen or Subject of a Foreign Country | 3 | 3 | Foreign Nation | 6 | 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### O A. Antitrust
- [ ] 410 Antitrust

### O B. Personal Injury/Malpractice
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Medical Malpractice
- [ ] 365 Product Liability
- [ ] 368 Asbestos Product Liability

### O C. Administrative Agency Review
- [ ] 151 Medicare Act

Social Security:
- [ ] 861 HIA ((1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g)
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g)

Other Statutes
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 890 Other Statutory Actions (If Administrative Agency is Involved)

### O D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### (X) E. General Civil (Other) OR  O F. Pro Se General Civil

**Real Property**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent, Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**Personal Property**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**Bankruptcy**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**Prisoner Petitions**
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**Property Rights**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**Federal Tax Suits**
- [ ] 870 Taxes (US plaintiff or defendant
- [ ] 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 630 Liquor Laws
- [ ] 640 RR & Truck
- [ ] 650 Airline Regs
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**Other Statutes**
- [ ] 400 State Reapportionment
- [ ] 430 Banks & Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation

- [ ] 470 Racketeer Influenced & Corrupt Organizations
- [ ] 480 Consumer Credit
- [ ] 490 Cable/Satellite TV
- [ ] 810 Selective Service
- [X] 850 Securities/Commodities/Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 900 Appeal of fee determination under equal access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violations of 15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), (b)(2)(B) and (b)(5) and 17 C.F.R. §§ 240.10b-5, 13b2-1, 12b-20, 13a-1, and 13b2-2

**VII. REQUESTED IN COMPLAINT**    ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____    Check YES only if demanded in complaint
JURY DEMAND:    YES ☐    NO ☒

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☒    NO ☐    If yes, please complete related case form.

DATE  May 13, 2008    SIGNATURE OF ATTORNEY OF RECORD  /s/

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.